**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 8, 2026**

# In the Court of Appeals of Georgia

A25A2074. GEORGIA LOTTERY CORPORATION et al. v. MRE-BOP OPERATIONS, LLC.

FULLER, Senior Judge.

MRE-BOP Operations, LLC owns a convenience store, and it had a license to operate coin-operated amusement machines, often referred to as COAMs. After two of its store clerks made improper cash payouts of COAM winnings to an undercover police officer, the Georgia Lottery Corporation, also known as the GLC, fined MRE-BOP $30,000 and revoked its COAM license for two years. Following a truncated appeal at the administrative level, the superior court reversed the GLC's final agency decision, and the GLC appeals.[1] In its appeal to this Court, the GLC contends that

---

[1] Oral argument was held on October 7, 2025, and is archived on the Court's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A25A2074 (Oct. 7, 2025), available at https://vimeo.com/1127168256.

(1) MRE-BOP failed to exhaust its administrative remedies; (2) MRE-BOP's petition for judicial review to the superior court was barred by the prior pending action doctrine and res judicata; (3) the superior court applied the incorrect standard of review; (4) the superior court erred in vacating the penalties imposed by the GLC; and (5) the superior court erred in finding various GLC procedures and penalties unconstitutional. For the reasons that follow, we affirm the decision of the superior court in part, reverse in part, vacate in part, and remand the case with direction.

The relevant facts are largely undisputed. MRE-BOP owns and operates a convenience store in Buford. On April 18, 2024, a store clerk provided an undercover officer with a cash payout of $240 for COAM winnings. Such payouts are misdemeanors and are also prohibited under GLC rules.[2] The following day, the same clerk gave the same undercover officer another cash payout of $110. Finally, on May 2, 2024, a different store clerk paid out $20 in cash to the same officer. As a result of

---

[2] See OCGA § 16-12-35(g) ("Any person owning or possessing" certain amusement games or devices "or any person employed by or acting on behalf of any such person who gives to any other person money as a reward for the successful play or winning of any such amusement game or device shall be guilty of a misdemeanor of a high and aggravated nature."); GLC Rule 13.1.16(1) ("Redemption associated with the playing of [a] COAM is permissible only to the extent the redemption is consistent with OCGA § 16-12-35."). For general information on the GLC Rules and their role in this opinion, see infra note 3.

these cash payouts, the GLC issued a single citation. Following an evidentiary hearing,

a GLC hearing officer determined that MRE-BOP was guilty of violating OCGA § 16-

12-35 and thereby GLC Rule 13.1.16.[3] Finding that MRE-BOP also had three prior

---

[3] The parties have not made any of the GLC rules a part of the appellate record. Historically, the GLC rules were not promulgated in accordance with Georgia's Administrative Procedures Act ("APA"). See OCGA § 50-27-9(a)(3) (2023) (providing that the GLC may adopt "bylaws, regulations, and policies and procedures for the regulation of its affairs and the conduct of its business" but that in doing so, it was exempt from the APA), (a)(19) (2023) (providing that the GLC could "adopt and amend such regulations, policies, and procedures as necessary to carry out and implement its powers and duties [and] organize and operate the corporation" and that, in doing so, the GLC was exempt from the APA). This Court cannot take judicial notice of regulations and rules that are not promulgated in accordance with the APA. See, e.g., *Ponce v. State*, 279 Ga. App. 207, 210–11(2) (630 SE2d 840) (2006) (noting that this Court cannot judicially notice rules "not promulgated in accordance with the APA"). See also OCGA §§ 24-2-220 (providing for judicial notice of "the administrative rules and regulations filed with the Secretary of State"); 50-13-8 (providing that "[t]he courts shall take judicial notice of any rule which has become effective pursuant to" the APA).

However, in 2024 and again in 2025, OCGA § 50-27-9(a)(19) was amended. See Ga. L. 2025 at 255, § 1 (HB 74); Ga. L. 2024 at 739, § 1 (HB 353). The current version of OCGA § 50-27-9(a)(19) provides that the APA governs the promulgation of "rules, regulations, policies, or procedures" regarding COAMs, although other GLC rules and regulations are still exempt. But it does not appear that any of the GLC rules at issue in this case have been promulgated as a part of the Rules and Regulations of the State of Georgia, the official compilation of agency rules. See generally OCGA § 50-13-7(d). For this reason, we decline to take judicial notice of them, and we remind the parties to carefully consider whether they should provide this Court with the relevant GLC rules as a part of the record on appeal. Nevertheless, to provide context to this opinion and because the parties do not dispute the contents or language of any of the relevant rules, we have referred to particular rules as needed. The GLC

violations of GLC record-keeping requirements, the hearing officer ordered MRE-BOP to pay a penalty of $30,000 and revoked its COAM license for two years.[4]

The hearing officer's decision was issued on July 1, 2024. On July 3, 2024, MRE-BOP filed a motion for reconsideration with the hearing officer. However, six days later, before the hearing officer ruled on the motion for reconsideration filed with him, MRE-BOP also filed a "Combined Motion for Review and Request for Reconsideration" to the GLC CEO.[5] When the combined motion was filed with the

rules governing COAMs are available online at https://www.gacoam.com/documents.

[4] The hearing officer "revoked" MRE-BOP's COAM license for two years, and the penalty statute refers to revocation and suspension as possible penalties, see OCGA § 50-27-85(a)(2).

[5] In doing so, MRE-BOP made explicit that it was unsure if reconsideration was properly directed to the hearing officer or the CEO and, as such, it had filed both motions out of an abundance of caution. Apparently, this was not an entirely unusual occurrence in administrative appeals to the GLC. See, e.g., *Arc Gaming & Techs. v. Hiram Imp, Inc.*, 375 Ga. App. 581, 582–83 (916 SE2d 781) (2025) (recounting that a COAM owner had filed requests for reconsideration with both the GLC CEO and the hearing officer and that, after both motions were denied, the owner sought review in the superior court, which consolidated the petitions). This confusion appears to have arisen because a legislative amendment effective May 6, 2024, repealed former OCGA § 50-27-102(d) — the statutory basis for the GLC's appeals process — yet the GLC failed to update its published rules, leaving obsolete and contradictory language in place prior to MRE-BOP's first administrative appeal. Although the GLC has since altered or removed those "former" rules, we refer to them here because they were the

CEO, the hearing officer, in his own words, "ceased to act" on the motion for reconsideration filed on July 3. Ultimately, the combined motion was deemed denied when the CEO did not rule on it within 30 days. See *Amusement Leasing v. Ga. Lottery Corp.*, 352 Ga. App. 243, 244 & n.1 (834 SE2d 330) (2019) (citing former GLC Rule 13.2.5(1)(b)(4) for the proposition that when the GLC CEO does not issue an order on a motion for review within 30 days, the motion is deemed denied).

MRE-BOP then sought review of the GLC's decision on the combined motion in the superior court. On November 7, 2024, the court granted the GLC's motion to dismiss on the basis that MRE-BOP had failed to exhaust its administrative remedies "by failing to obtain a decision" on the motion for reconsideration it filed with the hearing officer. MRE-BOP appealed from the November 7 dismissal order, and this Court affirmed without opinion pursuant to Court of Appeals Rule 36. See *MRE-BOP Operations v. Ga. Lottery Corp.*, 376 Ga. App. XXIV (July 15, 2025) (unpublished) .

After the superior court granted the GLC's motion to dismiss, MRE-BOP asked the hearing officer to rule on the motion for reconsideration previously filed on July 3. The GLC "expresse[d] no position" as to how the hearing officer should handle the

published guidelines that governed MRE-BOP's appeals.

5

motion for reconsideration. Once — according to the hearing officer — the superior court "refer[red] the matter back," he denied the motion for reconsideration on the merits on November 26, 2024. MRE-BOP once again filed a motion for review with the CEO, who again did not rule within 30 days, and the motion therefore was again deemed denied. Thereafter, MRE-BOP filed a new petition for review in the superior court . The GLC filed a motion to dismiss the new petition for review, which the superior court denied. Following a final hearing, the superior court reversed the GLC's decision on several independent grounds, finding that: (1) the relevant statute, OCGA § 50-27-85, allows the GLC to impose penalties for COAM violations only by a location owner or operator, not its employees; (2) the GLC was not statutorily permitted to suspend or revoke MRE-BOP's license because it had only two total citations, whereas a suspension requires three or more offenses; and (3) the GLC's regulatory provisions concerning penalties and procedures are unconstitutional for multiple reasons. This appeal follows.[6]

---

[6] We initially transferred this appeal to the Supreme Court of Georgia because that Court has the ultimate responsibility for determining appellate jurisdiction. See *Saxton v. Coastal Dialysis & Med. Clinic*, 267 Ga. 177, 178 (476 SE2d 587) (1996). See also *Atlanta Indep. School System v. Lane*, 266 Ga. 657, 657(1) (469 SE2d 22) (1996) (citing Ga. Const. of 1983, Art. VI, Sec. VI, Par. II(1)) (setting forth the Supreme Court's exclusive jurisdiction over certain constitutional questions). The Supreme

We begin with a general overview of appeals from decisions of the GLC. The COAM industry is highly regulated and governed by an extensive statutory scheme. *Gebrekidan v. City of Clarkston*, 298 Ga. 651, 656–57(3)(a) (784 SE2d 373) (2016). See OCGA § 50-27-70 et seq. Before the GLC may revoke a COAM license or impose any other sanction, the license holder is entitled to a hearing before a hearing officer. OCGA § 50-27-74(a), (c). After the hearing, the officer issues an "executive order" containing the hearing officer's determination and any penalties to be imposed. See *Ultra Group of Cos. v. Prince & Prince*, 323 Ga. 1, 5(2) (921 SE2d 290) (2025).

Under former GLC rules, the executive order was then generally subject to "a two-step appeal procedure within the GLC that involves requesting reconsideration from the hearing officer and then moving for review by the GLC's president/CEO." *Amusement Leasing*, 352 Ga. App. at 247(2) (citing former GLC Rule 13.2.5(1)). However, in some instances the licensee could seek review directly from the GLC CEO. See OCGA § 50-27-102(c)(5) (providing that a decision of the hearing officer

Court returned the appeal to this Court for disposition. See Case No. S26A0798 (Mar. 17, 2026).

may be appealed to the CEO).[7] Importantly, the failure to follow the GLC's appeal procedure constituted "a waiver of" the party's appeal rights. See *Prince & Prince,* 323 Ga. at 5(2) (quotation marks omitted) (citing former GLC Rule 13.2.5(3)).

In turn, appeals from actions of the CEO "shall be to the Superior Court of Fulton County." OCGA § 50-27-76(a). Accord OCGA § 50-27-102(c)(5). The final judgment of the superior court may then be appealed to this Court as "provided for in civil actions generally." OCGA § 50-27-77. See generally OCGA § 5-6-34(a)(1)(B). Importantly, when "this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision" but rather to review "whether the record supports the final decision of the administrative body." *Ultra Group of Cos. v. S & A 1488 Mgmt.*, 357 Ga. App. 757, 759 (849 SE2d 531) (2020) (citation modified). Nevertheless, "[w]here, as here, a case

---

[7] At the time of MRE-BOP's first administrative appeal, the published rules directed an aggrieved party to bypass the hearing officer's reconsideration and appeal directly to the CEO if the hearing officer was appointed under former OCGA § 50-27-102(d), which governed disputes between licensees. Because the legislature repealed that statutory subsection, and because the present case involves a dispute between a licensee and the GLC rather than between licensees, MRE-BOP could not determine which administrative appellate path applied. Thus, MRE-BOP sought clarification from the GLC and ultimately filed both motions out of an abundance of caution. See supra note 5.

turns on statutory interpretation and resolution of questions of law, we apply a de novo standard of review." *Arc Gaming & Techs. v. Hiram Imp, Inc.*, 375 Ga. App. 581, 582 (916 SE2d 781) (2025).

With these general principles in mind, we turn now to the GLC's specific claims of error. We will consider various procedural issues first and then address the superior court's order on the merits.

1. The GLC contends that MRE-BOP failed to exhaust its administrative remedies in the instant case because it failed to obtain a "valid order" on reconsideration from the hearing officer, as the hearing officer's order on reconsideration was a "nullity."[8] This is belied by the record. Although the hearing officer questioned whether his ruling on reconsideration was a nullity under the APA and "the law of Georgia" because he lacked authority to overrule the CEO, he nevertheless considered and denied MRE-BOP's motion for reconsideration on the merits on November 26, 2024. Cf. *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006) (explaining that "pleadings, motions, and orders are construed according to their substance and function and not merely by

---

[8] We have taken the GLC's claims of error out of order.

9

nomenclature"). Because MRE-BOP obtained a ruling on the merits of its motion for reconsideration from the hearing officer, we conclude that it exhausted its administrative remedies before filing its second petition for review in the superior court.

2. In a related contention, the GLC argues that the superior court erred in denying its motion to dismiss MRE-BOP's second petition for review based on the prior pending action doctrine and res judicata and because MRE-BOP waived its appeal rights. Although the proceedings at the agency level were not a model of efficiency, the GLC does not state a persuasive case that the superior court was required to dismiss MRE-BOP's second petition for review.

As set forth above, after the hearing officer issued his executive order, MRE-BOP filed both a motion for reconsideration with the hearing officer and a "Combined Motion for Review and Request for Reconsideration" directed to the GLC CEO. In its combined motion, as well as in its prior communications to the GLC, MRE-BOP indicated that it was unclear whether GLC rules required it to file a motion for reconsideration or a motion for review and requested the GLC's input on the GLC's

own appeal procedures. It appears to be undisputed that the GLC never responded, and, in an abundance of caution, MRE-BOP filed both motions.

MRE-BOP's appeal to the superior court from the denial of its first, combined motion for review to the CEO was thereafter dismissed for failure to exhaust administrative remedies because MRE-BOP failed to first obtain a ruling on its motion for reconsideration from the hearing officer. However, as set forth above, after that appeal was dismissed, MRE-BOP obtained a ruling from the hearing officer on its previously filed motion for reconsideration, again sought review from the GLC CEO, and thereafter filed a new petition for review in the superior court.

(a) The GLC argues that MRE-BOP's current appeal is barred by the prior pending action doctrine. We disagree.

Pursuant to OCGA § 9-2-5(a):

No plaintiff may prosecute two actions in the courts at the same time for the same cause of action and against the same party. If two such actions are commenced simultaneously, the defendant may require the plaintiff to elect which he will prosecute. If two such actions are commenced at different times, the pendency of the former shall be a good defense to the latter.

As an initial matter, there are not two actions here. Rather, there was one action that was temporarily split into two during the appellate proceedings at the administrative level. The GLC points to no authority in support of its unstated proposition that MRE-BOP is a "plaintiff" prosecuting an action within the meaning of OCGA § 9-2-5(a) by seeking to appeal an administrative decision of the GLC. On the most basic level, in filing a petition for review to the superior court, MRE-BOP is not a plaintiff; it is a petitioner. See OCGA § 5-3-7(b).

Moreover, even if the prior pending action rule arguably could apply to appeals of the GLC's administrative decisions by petition for review, MRE-BOP was candid throughout these proceedings that it found the GLC appellate rules unclear and it asked the GLC to provide guidance on its own rules several times. And, as set forth above, after the superior court dismissed the first petition for review and MRE-BOP asked the hearing officer to rule on its motion for reconsideration, the GLC "expresse[d] no position" as to how the hearing officer should handle the motion for reconsideration. The GLC cannot now complain of a legal quagmire that it assisted in producing. See generally *Dep't of Transp. v. Camvic Corp.*, 284 Ga. App. 321, 322(1) (644 SE2d 171) (2007) ("Where, as here, a party's own action assisted in producing

12

a judgment, order, or ruling, generally, that party will not be heard to complain about it on appeal.").

(b) The GLC also argues that MRE-BOP's petition for review in the superior court in this case is barred by res judicata because the superior court in the prior petition for review determined that MRE-BOP failed to exhaust its administrative remedies and thereby waived its appeal rights. This argument is not compelling.

As a general rule,

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

OCGA § 9-12-40. Thus, for res judicata to apply, three prerequisites must be satisfied: "(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Coen v. CDC Software Corp.*, 304 Ga. 105, 112(2) (816 SE2d 670) (2018). But here, MRE-BOP's failure to exhaust administrative remedies before filing its first petition for review deprived the superior court of jurisdiction over that petition. See *We, the*

*Taxpayers v. Bd. of Tax Assessors of Effingham County*, 292 Ga. 31, 35(2) (734 SE2d 373) (2012). See also *Sigmon v. DeKalb County School Dist.*, 366 Ga. App. 231, 232(1) (881 SE2d 695) (2022) ("[A] plaintiff's failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction over the complaint." (citation modified)); *Perkins v. Dep't of Med. Assistance*, 252 Ga. App. 35, 37(1) (555 SE2d 500) (2001) (explaining that the trial court lacked subject matter jurisdiction because the appealing party "had no right to appeal to the superior court unless and until it had as a condition precedent exhausted its administrative remedies through a timely administrative appeal"). Accordingly, the first petition to the superior court did not result in an adjudication on the merits by a court of competent jurisdiction. See *Coen*, 304 Ga. at 112(2). Stated another way, under these particular circumstances, MRE-BOP's filing of a premature petition for review in the superior court and the court's dismissal of the premature petition did not render the second, properly-exhausted petition for review barred by res judicata. See *Collins v. Morris*, 263 Ga. 734, 738(2) (438 SE2d 896) (1994) (holding that trial court's determination that recall petition was legally insufficient did not bar revised application because "[a] former

adjudication merely as to form rather than on the merits does not operate as res judicata").

Because the superior court never reached the merits of MRE-BOP's first petition for review, we also reject the GLC's related claim that collateral estoppel barred MRE-BOP's action. See generally *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866–67(2) (463 SE2d 5) (1995) ("Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."). The superior court's order dismissing the petition for review as to the combined motion was an adjudication on the "merits" of only whether it had jurisdiction over *that* petition, which was premature. It made no ruling as to whether it had jurisdiction over the subsequent, properly exhausted petition.

(c) The GLC also argues that MRE-BOP waived its appeal rights by abandoning the administrative process prior to filing its first petition for review, and therefore it improperly attempted to "go back to the hearing officer for another round of reconsideration" after that first petition was dismissed. We do not find this argument compelling.

As set forth in Division 2(a), MRE-BOP was consistent in attempting to preserve its rights under the administrative process and candid that it was unsure of the correct procedure to follow, and it appears that the GLC did nothing to address the confusion. Moreover, in dismissing the premature (first) petition, the superior court ruled only that MRE-BOP had failed to exhaust its administrative remedies before filing that petition. As set forth above in Division 2(b), upon finding that MRE-BOP had not exhausted its administrative remedies, the superior court lacked jurisdiction to consider the premature petition. See *Sigmon*, 366 Ga. App. at 232(1); *Perkins*, 252 Ga. App. at 37(1). The superior court did not base its dismissal on waiver, and, indeed, it could not have since it lacked jurisdiction to make any other ruling once it concluded that MRE-BOP had not exhausted its administrative remedies.

3. Next, the GLC contends the superior court applied the wrong standard of review by failing to consider whether any evidence supported the hearing officer's findings. We disagree.

In support of this argument, the GLC takes issue with the superior court's description of the penalties the GLC imposed as "draconian" and unfair and the court's request that the parties reach a settlement as to a fine. But these comments do

not demonstrate a failure by the court to consider whether the evidence supported the hearing officer's finding that improper cash payouts were made. Rather, the payouts appear to have been undisputed. Nevertheless, as a part of its appellate review, the superior court was entitled to consider whether the penalties were unlawful or not supported by the evidence (issues we address below). See OCGA § 50-27-76(b)(1), (5).[9]

4. (a) Turning to the decision on the merits, the GLC contends the superior court erred in determining that the penalties against MRE-BOP were unauthorized because, the GLC argues, there was evidence that MRE-BOP's employees made impermissible cash payouts. In light of the penalty statute at issue and the evidence presented in this case, the GLC's argument is not persuasive.

---

[9] OCGA § 50-27-76(b) provides that, on appeal, the superior court "shall not substitute its judgment for that of the [GLC] or [CEO] as to the weight of the evidence on questions of fact committed to the discretion of the [GLC] or [CEO]. The court may affirm the decision of the [GLC] or [CEO] in whole or in part; the court shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the [GLC]'s or [CEO's] findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the [GLC] or [CEO]; (3) Made upon unlawful procedures; (4) Affected by other error of law; (5) Not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

(i) Addressing this claim of error requires us to construe OCGA § 50-27-85(a), the penalty statute at issue. When interpreting a statute, the fundamental canons of statutory construction apply. *McBrayer v. Scarbrough*, 317 Ga. 387, 393(2)(c) (893 SE2d 660) (2023). "[A] statute draws its meaning from its text." Id. (citation modified). In construing a statute,

> we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Indeed, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

Id. (citation modified). Accord *Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 502(2) (816 SE2d 438) (2018). Moreover, as revenue laws, COAM statutes are not to be liberally construed in favor of the GLC. See id. at 503–04(2)(a).

OCGA § 50-27-85(a) provides:

> Except as specifically provided in this article, for single or repeated violations of this article *by a location owner or location operator* who offers one or more bona fide [COAMs] for play by the public, the [GLC] may impose the following penalties on such a location owner or location

18

operator: (1) A civil fine in an amount specified in rules and regulations promulgated in accordance with this article; or (2) For a third or subsequent offense, a suspension or revocation of the privilege of offering one or more bona fide [COAMs] for play by the public.

(Emphasis supplied.) And OCGA § 50-27-70(b)(8) defines a "[l]ocation owner or location operator" as "an owner or operator of a business where one or more bona fide [COAMs] are available for commercial use and play by the public." (Quotation marks omitted.) Accord *Stockton v. Shadwick*, 362 Ga. App. 779, 783(1)(a) (870 SE2d 104) (2022).

Here, the evidence was undisputed that the persons who made the cash payouts were MRE-BOP employees. The hearing officer concluded that MRE-BOP, as the owner and operator of the licensed business, was responsible for its employees' acts based on both OCGA § 16-12-35(g), which criminalizes cash payouts, and the definition of "person" in OCGA § 50-27-70(b)(15), which includes both a "corporate entity" and any "employee of any corporate entity." Specifically, the hearing officer reasoned that because MRE-BOP's clerks were "persons" under this definition, MRE-BOP was strictly responsible for their cash payouts. The superior court, however, correctly concluded that no penalty could be imposed under this rationale

because OCGA § 50-27-85(a) does not apply to violations by "persons" or employees. Because this statute authorizes penalties only for violations by a "location owner or location operator," we must determine what is meant by that phrase. Doing so requires us to consider the phrase in the context of the laws governing the GLC. See, e.g., *McBrayer*, 317 Ga. at 395(2)(d).

Notably, although OCGA § 50-27-85(a) applies only to a "location owner or location operator," other related statutes apply more broadly. See generally *McBrayer*, 317 Ga. at 393(2)(c) (explaining that we must consider a statutory text in the context in which it appears). As a general matter, the expression of one thing implies the exclusion of another. See *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (explaining two of the tenets of statutory construction: "expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)" (citation modified)). For example, other COAM statutes apply not only to location owners and location operators, but also to their agents, see OCGA § 50-27-87(b)(1) (referring to "the owner or agent of the location owner or location operator"), or specifically to

20

their employees, see OCGA § 50-27-87(c) ("A master licensee shall not pay a commission or provide anything of value to any person who is an employee, independent contractor, or immediate family member of a location owner or location operator."). The legislature has also explicitly criminalized cash payouts made by employees. See OCGA § 16-12-35(g) (criminalizing cash payouts by "[a]ny person owning or possessing" certain amusement games or devices "or any person employed by or acting on behalf of any such person").[10] And other COAM statutes apply more broadly to "persons." Compare OCGA § 50-27-85(a), with OCGA §§ 50-27-82(b)-(d) (imposing criminal penalties for violations by a "person"); 50-27-87(a)(1) (prohibiting "a person" from owning, maintaining, placing, or leasing a COAM without a valid master license).

Despite the limited language used by the General Assembly in OCGA § 50-27-85(a), the GLC nevertheless argues that the sanctions against MRE-BOP were permissible because GLC rules provide that any act committed by an employee shall

---

[10] See supra note 2. We note that the citation issued in this case referenced only a violation of GLC Rule 13.1.16, which limits redemption of COAM winnings to that consistent with OCGA § 16-12-35. See GLC Rule 13.1.16(1). Although the hearing officer referred to OCGA § 16-12-35 in his order, there is no evidence in the record as to whether anyone was charged with a criminal violation of OCGA § 16-12-35(g) as a result of the cash payouts made in this case.

be deemed an act of the licensee. See GLC Rules 13.1.12(2) (providing that for purposes of administering and enforcing OCGA § 50-27-1 et seq. or the GLC Rules, "any act committed by an employee, agent or representative of a licensee shall be deemed to be [an] act of the licensee"); 13.1.13(19) (providing that license suspension or revocation can be imposed for violations of COAM statutes or regulations by any "person holding any COAM license or permit . . . or any employee or agent of such person"). This argument is not compelling because the GLC cannot rewrite a statute.[11] See *White v. State Farm Fire & Cas. Co.*, 291 Ga. 306, 309(1) (728 SE2d 685) (2012) (holding that while the insurance commissioner has "the authority to promulgate rules and regulations that are reasonably necessary to implement and enforce the insurance code," he "does not have authority to contravene or rewrite the insurance code" (emphases omitted)); *North Fulton Med. Ctr. v. Stephenson*, 269 Ga. 540, 543–44 (501 SE2d 798) (1998) (explaining that administrative agencies "are not

---

[11] The GLC makes a passing claim that even if its rules exceed its authority, MRE-BOP has nevertheless voluntarily agreed to be bound by them. **GLC Rule 13.1.4(6)(c), the rule upon which the GLC relies in making its claim, refers to certification of compliance with the GLC's rules and statutes; it does not impose any affirmative duties on licensees, such as MRE-BOP, beyond those imposed by statute. See GLC Rule 13.1.4(6)(c) (providing that in order to be eligible for a location license, the licensee must provide "certification of compliance with the provisions of the Act and with the [r]ules and [r]egulations of the GLC").**

22

authorized to enlarge the scope of, or supply omissions in, a properly-enacted statute," or to "change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body").

In light of the plain language of OCGA § 50-27-85(a), as well as the overall statutory scheme, which distinguishes between employees, agents, persons, and location owners and operators, we must conclude that the statute's penalties apply only to violations by location owners or location operators themselves. See generally *McBrayer*, 317 Ga. at 393(2)(c); *Turner*, 297 Ga. at 308. As such, the hearing officer's decision can only be affirmed if the evidence supports his determination that MRE-BOP itself committed a violation. See OCGA § 50-27-76(b)(5).

(ii) "[W]hen reviewing a decision of the GLC or its CEO, the superior court must accept [the] GLC's findings of fact if there is any evidence to support the findings." *Tabletop Media*, 346 Ga. App. at 501(1) (citation modified). Thus, the court must first "determine if there is evidence to support the factual findings; the court then is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence." Id. (quotation marks omitted).

23

Here, the superior court concluded that because there was no evidence of cash payouts by MRE-BOP's owners, Sayem Patel and Ponnembalam Muthiah, no penalty could be imposed. But the undisputed evidence shows that *MRE-BOP*, not Patel or Muthiah, is licensed as the location operator. Because MRE-BOP is the location owner or location operator within the meaning of OCGA § 50-27-70(b)(8), the statutory scheme does not necessarily require cash payouts by Patel or Muthiah personally.

On the other hand, the hearing officer determined that the employees' actions per se were evidence of violations by MRE-BOP. But there was also evidence in this case — which was not disputed at the hearing — that before the citation was issued, MRE-BOP had received no complaints about cash payouts, that its employees were instructed as to appropriate redemptions, that the clerks who made the cash payouts were no longer employed by MRE-BOP, and that MRE-BOP had instituted additional training and supervision since the citation was issued. In light of this evidence, the hearing officer erred to the extent that he determined that MRE-BOP made cash payouts merely because its employees did so. In light of the plain language of the statute, the GLC was not authorized to impose penalties pursuant to OCGA § 50-27-

85(a) simply because MRE-BOP's employees made cash payouts, and the superior court was correct to reverse the executive order and remand the matter to the hearing officer. On remand, the hearing officer should issue a new executive order that comports with the plain language of OCGA § 50-27-85(a) and is not inconsistent with this opinion.

(b) The superior court also ruled, as an alternative basis for reversing the executive order, that the penalties imposed were improper because MRE-BOP had only one prior citation. The GLC argues that this holding is also erroneous because the two citations combined contained six separate violations.

Because this issue may recur on remand if the hearing officer determines that MRE-BOP itself made impermissible cash payouts, we will address it. As relevant to this claim, OCGA § 50-27-85(a)(2) permits the GLC to impose penalties upon a location owner or location operator for "single or repeated violations of this article," including suspension or revocation for "a third or subsequent offense." Here, the superior court determined that because MRE-BOP had only received two citations — the one at issue in this case and a 2018 citation for paperwork issues — the hearing

officer could not find multiple violations. But because the plain language of the statute refers to "violations" and "offense[s]," not "citations," the number of violations or offenses is determinative, not the number of citations. See *McBrayer*, 317 Ga. at 393(2)(c) ("where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning" (quotation marks omitted)). As the superior court erroneously limited its review to the number of citations, rather than the number of separate offenses committed, we reverse this portion of the superior court's order. Thus, on remand, if the hearing officer determines that penalties against MRE-BOP are authorized, he should then consider if MRE-BOP had three or more offenses, warranting suspension or revocation under OCGA § 50-27-85(a)(2).[12]

---

[12] The GLC nevertheless argues that it had the discretion to suspend or revoke MRE-BOP's license pursuant to OCGA § 50-27-71(a.2)(1) & (4), which provide that the GLC may suspend or revoke a location owner or operator license if the licensee "has intentionally violated a provision of this chapter or a regulation promulgated under this chapter" or if the failure to suspend or revoke a license "would be contrary to the intent and purpose of this article." Although the hearing officer mentioned OCGA § 50-27-71(a.2) in his order, it appears that he imposed the fine and suspension pursuant to only OCGA § 50-27-85(a). Accordingly, we decline to determine, in the first instance, if suspension was permitted under OCGA § 50-27-71(a.2) on the facts of this case. See generally *McQueen v. Long*, 372 Ga. App. 840, 844 (906 SE2d 909) (2024) (explaining that this Court is "a court of review, not of first view" (quotation marks omitted)).

5. Finally, the superior court further concluded that various GLC procedures and penalties are unconstitutional. The GLC also complains of these rulings. Although the Georgia Constitution grants the Supreme Court of Georgia exclusive appellate jurisdiction over certain constitutional questions, see Ga. Const. of 1983, Art. VI, Sec. VI, Par. II(1), constitutional challenges to administrative rules fall within this Court's jurisdiction. *Ga. Dep't of Cmty. Health v. Northside Hosp., Inc.*, 295 Ga. 446, 446 n.2 (761 SE2d 74) (2014).

Nevertheless, as a general matter, an appellate court should "not reach novel constitutional questions when a case can be resolved without passing on such issues." *State v. Randall*, 318 Ga. 79, 81(2) (897 SE2d 444) (2024). Having determined, on other grounds, that the superior court was correct to reverse the executive order and remand the matter to the hearing officer, and having directed the hearing officer on remand to issue a new executive order that comports with the plain language of OCGA § 50-27-85(a), we vacate the superior court's rulings regarding the

constitutionality of the GLC's procedures and penalties. See generally *Randall*, 318 Ga. at 81(2).

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Doyle, P. J., and Davis, J., concur.*